U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Northern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2012 JUN 27 P 1:37

CLERK'S OFFICE
AT BALTIMORE

BY _____

| | | |
|---|---|---|
| Rod J. Rosenstein<br>*United States Attorney*<br><br>P. Michael Cunningham<br>*Assistant United States Attorney* | *36 South Charles Street*<br>*Fourth Floor*<br>*Baltimore, Maryland 21201* | *DIRECT: 410-209-4884*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-3091*<br>*TTY/TDD: 410-962-4462*<br>*michael.cunningham@usdoj.gov* |

May 18, 2012

Michael Montemarano
10630 Little Patuxent Parkway, Suite 146
Columbia, MD 21044
montemarano67@gmail.com

> Re: *United States v. Brittany Whedbee*
> Pre-Indictment Plea Agreement

Dear Mr. Montemarano:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant, Brittany Whedbee, by the United States Department of Justice, Civil Rights Division and the United States Attorney's Office for the District of Maryland (collectively, "the Government"). The terms of the agreement are as follows:

### Offense of Conviction

1.      The Defendant agrees to waive indictment and plead guilty to a Criminal Information which will charge her with conspiracy to deprive a person of civil rights, in violation of 18 U.S.C. § 241, and with Fair Housing Act violation, in violation of 42 U.S.C. § 3631. The Defendant admits that she is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offense

2.      The elements of the offenses to which the Defendant has agreed to plead guilty, and which the Government would prove if the case went to trial, are as follows:

        a.      18 U.S.C. § 241

            (i)      That a conspiracy existed;

            (ii)     That the purpose of the conspiracy was to injure, oppress, threaten, or intimidate one or more victims in the enjoyment

States; and

 (iii) That the defendant knowingly and willfully entered into the conspiracy, knowing of its unlawful purpose.

  The information charges that the Defendant conspired to deprive the victims of the following right: the right to occupy a dwelling free from injury, intimidation, or interference based on race and color. This right is secured by the Constitution and laws of the United States.

  b. 42 U.S.C. § 3631

  (i) That the Defendant threatened to use force;

  (ii) That the Defendant willfully intimidated or interfered with the victims; and

  (iii) That the Defendant acted because of the victims' race or color and because they were enjoying a federally protected housing right.

Penalties

  3. The maximum sentence provided by statute for a violation of 18 U.S.C. § 241 is as follows: 10 years imprisonment, 3 years supervised release, and a $ 250,000 fine.   The maximum sentence provided by statute for a violation of 42 U.S.C. § 3631 is as follows: one year imprisonment, 1 year supervised release, and a $100,000 fine.  In addition, the Defendant must pay $125 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.  This Court may also order her to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1]  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

---

  [1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

## Waiver of Rights

4.    The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

a.    The Defendant has the right to have her case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against her. By agreeing to proceed by way of Information, she is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

b    If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, the Government, and the Court all agreed.

c.    If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

d.    If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

e.    The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

f.    If the Defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

g.    By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the facts of her case.

3

        h.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

        i.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

Advisory Sentencing Guidelines Apply

      5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

      6.      The Government and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A, which the Government would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors (except as noted in subparagraph 6(c)):

        a.      Pursuant to U.S.S.G. § 2H1.1, the base offense level for Count One is 12

        b.      Pursuant to U.S.S.G. § 3A1.1, increase the offense level by 3 for hate crime motivation.

        c.      Pursuant to U.S.S.G. § 3B1.2, decrease the offense level by 3 levels for mitigating role. The defendant reserves the right to argue at sentencing that the offense level should be decreased by 4 levels.

        d.      Pursuant to U.S.S.G. § 3C1.1, increase the offense level for count One by two for obstruction.

        e.      The Government does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct. The Government may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, the

4

Government, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw her plea of guilty. Thus, if the Defendant continues to accept responsibility, the final offense level that the Government and the Defendant agrees upon is **12.**

7.     The Defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a career offender or if the instant offense was a part of a pattern of criminal conduct from which she derived a substantial portion of her income.

8.     The Government and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Waiver of Appeal

9.     In exchange for the concessions made by the Government and the Defendant in this plea agreement, the Government and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b.     The Defendant and the Government knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.     Nothing in this agreement shall be construed to prevent the Defendant or the Government from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.     The Defendant waives any and all rights under the Freedom of Information Act relating to the Investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from the Government or any investigating agency.

## Obstruction or Other Violations of Law

10.    The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then the Government will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, the Government will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, the Government will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that she may not withdraw her guilty plea because the Government is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

11.    The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept the Government's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw her guilty plea, and will remain bound to fulfill all of her obligations under this agreement. The Defendant understands that neither the prosecutor, her counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Fed. R. Evid. 410 Waiver

12.    By signing this agreement, the Defendant expressly and voluntarily waives the protection of Fed. R. Evid. 410. Thus, in the event that she violates the plea agreement or, at any time after signing this agreement, withdraws her offer to plead guilty, any statements she makes in conjunction with, or following, this plea agreement – including the statements contained in the

Statement of Facts, any re-arraignment colloquies related to this case, any testimony she gives before a grand jury or another tribunal, and any leads from such statements, testimony or colloquies – shall be admissible for all purposes against her in any and all criminal proceedings.  By signing this agreement, the Defendant admits that the statements listed above will be admissible against her for any and all purposes if, for any reason, she fails to plead guilty, her plea of guilty is voided, or she withdraws her guilty plea.

Entire Agreement

13.    This letter supersedes any prior understandings, promises, or conditions between the Government and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case.  The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and the Government other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

Thomas E. Perez
Assistant Attorney General
U.S. Department of Justice
Civil Rights Division

By: _____
P. Michael Cunningham
Assistant United States Attorney

By: _____
AeJean Cha
Trial Attorney, Civil Rights Division

7

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_5/25/12_
Date

_Britty Whedbee_
BRITTANY WHEDBEE

I am **Brittany Whedbee**'s attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with her. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

_5/25/12_
Date

MICHAEL MONTEMARANO

8

## ATTACHMENT A - STATEMENT OF FACTS

*The undersigned parties hereby stipulate and agree that the following facts are true, and that if this matter had gone to trial, the government would have proven these facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not contain all of the relevant information known to the defendant. This is a sufficient factual basis, but it is not an exhaustive statement by the defendant.*

On or about April 26, 2010, through on or about April 30, 2010, Brittany Whedbee, the defendant, conspired with Joshua Wall, Billy Pratt, D.W. and J.N., to threaten and intimidate a black family (the "victim-family") because of the family's race and color and with intent to interfere with the family's housing rights. The goal of the conspiracy was to threaten the victims by hanging a dead raccoon from a noose on their porch.

In April 2010, the defendant lived with her family in Middle River, Maryland, which is in the District of Maryland. Two of the defendant's friends, Pratt and Wall, also lived with them. On or about April 26, 2010, the defendant's brother, a juvenile, got into a fight with a black child who was the son of the victim-family. Immediately after the fight, the defendant drove by the scene of the fight with a friend. The defendant's mother and her mother's boyfriend, were already there. The defendant's mother told her that one of the "niggers" beat up her brother. The defendant responded by asking the children which one of the "niggers" beat up her brother, and by yelling at the children that she was going to "fuck" them all up.

After the defendant returned home, her mother and her mother's boyfriend, J.N., repeatedly made comments that they wanted to "get back at the niggers." The defendant and her co-conspirators agreed upon a plan to hang a dead raccoon from the porch of the victim-family.

The defendant and her mother, D.W., encouraged J.N., Wall, and Pratt to hang the raccoon.

On or about April 29, 2010, the defendant's mother and J.N. found a dead raccoon to be used in their plan. J.N. and Wall made a noose. In the middle of the night, Pratt, Wall, and J.N left the house and hung the raccoon from the victim-family's porch.

After the incident, the defendant and her co-conspirators coordinated false stories to tell law enforcement about what each person was doing during the night of the raccoon-hanging. On or about August 24, 2011, FBI agents interviewed the defendant about the incident. The defendant knowingly lied to the FBI when she claimed that she did not know anything about the raccoon-hanging on the porch of the black child who had fought with her brother. She further claimed, falsely, that she did not know anyone involved with the incident. After the FBI agents left, the defendant called Pratt to warn him that the FBI agents would likely contact him about the incident.

The defendant and her co-conspirators understood and discussed the racial significance of using a raccoon, acknowledging that the term "coon" is a derogatory term for black people.

using a raccoon, acknowledging that the term "coon" is a derogatory term for black people. Moreover, the defendant and her co-conspirators discussed how hanging a raccoon symbolized "hanging a nigger" and how it would therefore scare the victims. The victim-family was in fact terrified by the raccoon-hanging. The parents in the victim-family explored the idea of sending their children to boarding school and of moving away, but they did not do so because it was not financially feasible.